HON. CHARLES E. FENNER,
HON. LYNN B. WATKINS,
HON. SAMUEL D. McENERY,  } *Associate Justices.*
HON. JOSEPH A. BREAUX.

---

### No. 10,705.

FIRST NATIONAL BANK OF STARKVILLE, MISS., VS. V. & A. MEYER & Co.

There can be no doubt of the correctness of the general proposition that a consignee who accepts a consignment, with the knowledge that the consignor has drawn on him, for a stated amount, against the goods consigned, impliedly promises to accept and pay the draft; and, that on refusal, he may be sued for a breach of contract.

It is a recognized principle of the commercial law, of universal application, that a bill of lading, legally transferred, gives a title to the property which it represents.

Bank vs. Meyer & Co.

Act 150 of 1868 is a legislative recognition and sanction of the principle.

A *bona fide* creditor of a consignor, who holds the latter's draft, for value, to which bills of lading, transferred in blank, are attached, to secure its payment, is to be deemed the *owner* of the goods, so far as to give validity to the *pledge*, created by the forwarder, and, on presentation of the draft, with the annexed bills, to the consignee, *before* he has accepted the consignment, is unquestionably entitled to the delivery of the property, and to the payment of his draft by the consignee.

In order to make absolute the rights of such creditor, it is not essential that the consignor should have directly advised the consignee of the consignment and of the drawing of the draft and transfer of the bills of lading. Such rights are fully secured when the holder of the draft presents it, with the bills of lading annexed, to the consignee *before* delivery of the goods to the latter.

Possession acquired of the consigned goods, by the consignee, and disposal by him of the same, to the prejudice of such draft, are illegal and unauthorized.

Surely, consignees have a right to pay themselves, *by preference*, of what may be due them by a consignor, out of the goods consigned by him to them; but only where the same have been shipped to them for that *purpose*, and the bills of lading have been mailed, or transmitted through the carrier, to them, under the terms of Act 44 of 1882.

Consignees not so situated and to whom a draft, with bills of lading indorsed in blank attached, is presented *before* acceptance by them of the consignment, are bound, on such acceptance, either to deliver the goods to the creditor and bill holder, or to pay the draft presented.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Rice & Armstrong* for Plaintiff and Appellee:

1. The court will take notice *ex proprio motu* of want of jurisdiction. Rogers vs. Goldthwaite, 32 An. 48; State ex rel. Newman vs. Hayles, 32 An. 1135; Schmidt vs. Brown, 32 An. 416; Bright vs. Thompson, 38 An. 801; Pinckney vs. Wolf, 41 An. 306; City of New Orleans vs. Scalzo, 41 An. 1141.

2. The real amount *in dispute* as shown by the record, and not the allegations, is the test. Stubbs vs. McGuire, 33 An. 1089, 1090; Denegre vs. Moran, 35 An. 347; Girardey vs. City, 26 An. 292; Wilkins vs. Gantt, 32 An. 929, 930.

3. The *bona fide* owner of a draft, with bill of lading indorsed to him, or in blank, attached, is pledgee of the property described in such bill of lading, and owner thereof, so far as to give validity to the pledge. Sec. 6, Act No. 150 of 1868, Session Acts, p. 194; Delgado vs. Wilbur, 25 An. 84; Gumbel vs. Beer, 36 An. 491; Scrutton on bills of lading, Sec. 74, p. 138.

4. A consignee, or factor, *not* having made advances on a *particular product* consigned to him, has no pledge upon such product, except the same be consigned "*for the purpose of paying*" some balance or account due him, and then only from the time the bill of lading or receipt of the carrier therefor is deposited in the mail, or given to the carrier for transmission. Secs. 1 and 2 of Act No. 44 of 1882, Session Acts, p. 56.

5. The consignee of goods under a bill of lading, duly indorsed, and attached to the consignor's bill of exchange upon him, takes the goods into his possession subject to the rights of the *bona fide* holder of the bill of exchange to demand payment. The consignee must honor the bill of exchange or surrender the goods. Helm vs. Meyer, Weis & Co., 30 An. 945; Tiedman on Commercial Paper, Sec. 494; Shephard vs. Harrison, 1 Aspinall, 66.

---

*Farrar, Jonas & Kruttschnitt* for Defendants and Appellees:

This is a controversy as to the first privilege upon proceeds of cotton, between the holder of a draft drawn in Mississippi with bill of lading attached, claiming a right of pledge resulting therefrom, and commission merchants in Louisiana, who received possession of said cotton and sold it, and claim first privilege upon the proceeds under the Louisiana law. The Louisiana law must prevail. Art. 3247, Civil Code; Helm vs. Meyer, Weis & Co., 30 An. 943.

Plaintiff has no right of pledge, having never had possession or delivery. Arts 3152, 3220, 3221, C. C.

The suit and intervention, being for an amount exceeding $3000, the court has jurisdiction.

---

The opinion of the court was delivered by

BERMUDEZ, C. J. The plaintiff sued to be recognized as the pledgee and qualified owner of certain cotton, or entitled to recover from the defendants the amount of a draft on them, to secure the payment of which, bills of lading for said cotton, indorsed in blank, were delivered by the consignor at the time of shipment.

The cotton having been sequestered, certain parties intervened the day after the seizure and bonded it.

The defendants denied title in plaintiff to the cotton, or right against them to recover the amount of the draft, averring that the cotton had been consigned to them by the consignor, whose creditors they were at the time; that they had possession of the cotton on which they had a privilege; that they sold it, paid themselves, and that there remained a balance to the credit of the consignor, applicable to the draft.

There was a qualified judgment for plaintiff, and one in favor of the intervenors, condemning the defendants to pay the amount of the draft and recognizing the rights of the plaintiff as pledgee to the proceeds of the cotton. From this judgment the defendants have appealed suspensively. The judgment for intervenors is not up for review.

The established facts are the following:

C. M. Waterman & Co., having purchased 68 bales of cotton, borrowed to pay it from the plaintiff's bank $3230.28, for which they drew at Arksville, Miss., on January 13, 1890, their draft on the defendants, attaching thereto, indorsed in blank, the bills of lading which they had obtained at Ackerman, Miss., from the railroad company for the cotton which was consigned to the defendants at New Orleans.

The draft was negotiated and delivered to the plaintiff, who, without delay, transmitted it to its correspondent here, who presented it, *with the bills of lading annexed*, to the defendants for acceptance and payment on the 15th and 16th, which was declined on the ground that they had received no advice or invoice from Waterman & Co. touching the same.

On the 16th the cotton, consigned to the defendants, was received by them and stored, and on the 17th it was sold by them to Strauss & Co., who paid for the same on the following day.

On the 20th the plaintiff obtained a sequestration against the cotton, which was executed on the day after. On the 22d Strauss & Co. intervened, and, as said, bonded the cotton, which went to their possession.

The cotton realized $3275.74 net, out of which the defendants paid themselves $1799.35, the amount of their claim for advances against Waterman & Co., leaving a balance of $1476.30 in their hands, out of which they acknowledged that plaintiff's claim could be paid.

The plaintiff's contention is that, by the transfer to them for value of the bills of lading, which were designed to secure payment of the draft, they have acquired a right to be deemed and taken to be the *owners* of the cotton, so far as to give validity to the *pledge*, created in their favor by Waterman & Co., and that they are entitled to the possession of the cotton, or to the amount of their draft.

On the other hand, the defendants urge that, as they were creditors for a balance of Waterman & Co. when the cotton was shipped to, and was received by them without contrary advice, they had a *privilege* on it which entitled them to a preference over all and even any seizing creditor.

The question presented for solution is, therefore:

Whether a *bona fide* holder and owner for value of a draft of a consignor, to whom the bill of lading of product has been trans-

ferred to secure payment, is entitled to possession of the goods, or,
in default, to payment of his draft in preference to consignees,
creditors of the consignor, but to whom the product has not been
consigned, for the purpose of paying themselves any sum due them
by him, or the bills of lading have not been mailed or transmitted
for delivery to them.

Section 6 of the Act of 1868, No. 150, page 194, in substance pro-
vides: that bills of lading, given by any forwarder, may be trans-
ferred by indorsement, and the transferee shall be deemed and taken
to be the *owner* of the goods, *so far as to give validity to any pledge*,
lien or transfer created by the forwarder, the property or goods to
be delivered *only* on surrender and cancellation of the bill of lading.

In Delgado vs. Wilbur, 25 An. 84, the then court (1873) well said,
commenting on that identical section, that it is only a legislative
sanction given to the commercial law of universal application, that
a bill of lading, legally transferred, gives title to the property it
represents; quoting authorities in support.

There can therefore be no doubt that when the bills of lading were
indorsed in blank by Waterman & Co., and delivered to the plaintiff
in Mississippi to secure the payment of the draft drawn by them on
the defendants, the plaintiff acquired a right of pledge which neces-
sarily followed them into Louisiana, continuing to attach thereto,
notwithstanding any possession which the defendants subsequently
acquired of them.

The contention of the consignees, that, under paragraph 2 of
Article 3247, R. C. C., they are entitled to a *privilege* for the balance
for advances due them, is not well founded.

That article does not rule so as to settle the controversy. It has
undergone, since its insertion into the Code, modifications which
prevent its application favorably to the defendants.

In 1874, by Act 66, page 114, the matter first received legislative
consideration, but in 1882 it was put into a new shape, which controls
the present litigation.

By Act No. 44 of that year (1882) Section 3, page 56, the Act of
1874 was amended so as to allow to all merchants, factors and
others having any sum of money due them by any consignor sending
any agricultural product for sale at New Orleans, or any other town
or city in the State, *for the purpose of paying the same*, a pledge on
such property, from the time of the mailing of the bill of lading, or

.giving of it to the carrier for transmission, with the right of selling the product and appropriating the proceeds to the debt; but without defeating or lessening any other valid encumbrance.

The words, "*for the purpose of paying,*" and those relative to prior encumbrances, were then *ex industria* inserted, as they are not found in the Act of 1874.

This provision of law is clearly destructive of the defendants' pretensions for several reasons, which are matters of fact.

Although it be true that the defendants were creditors of Waterman & Co., as claimed, still the fact remains *that* the cotton was not shipped to them for the *purpose* of paying themselves; *that* no bill of lading therefor was mailed or given to the carrier for transmission to them; *that* there existed a previous valid qualified alienation thereof, which could not be defeated or lessened by any subsequent transaction.

The ruling invoked, made in the case of Helm vs. Meyer, Weis & Co., 30 An. 943, can afford the defendants no relief.

The essential facts on which the controversy turned are dissimilar from those in the instant case, and the law which governed in its decision is different from that which controls in the present litigation.

In that case, the shipments were made "for account of the consignor," without any qualification; the letters of advice contained no mention of any draft as having been drawn against them; the bills of lading had been transmitted to the consignees; the draft had been drawn *after* the letters had issued and been received; the bills of lading were not annexed to the draft, which was presented *after* the consignees had accepted the consignment, received the cotton and disposed of it.

In the present instance the draft was drawn, the bill of lading transferred in blank, being attached thereto, was presented to the consignees BEFORE they had accepted the consignment, taken possession and disposed of the cotton.

In the first case, the defendants relied on the first paragraph of Article 3247, R. C. C., which was properly applied to the facts as presented, the court holding that the consignee could not be divested in the manner attempted by the draft holder.

In the case under consideration, the defendants rely on the second paragraph of the same article, which refers to a different state of

things, and which has undergone material changes, for the last time in 1882, before the facts of this case had arisen.

Even had the second part of the article not undergone modifications, it would not justify the pretensions of the defendants, who never had a *legal* possession for themselves of the cotton, and never had the bills of lading in their favor, so as to give them any pledge or lien on the cotton.

The ruling in 30 An. 943 rather militates decisively against the defendants here, for it formally and correctly announces that there can be no doubt of the correctness of the general proposition that a consignee who accepts a consignment with the advice and notice that the consignor has drawn on him, for a stated amount, against the goods consigned, impliedly promises to accept and pay the draft, and on refusal may be sued for a breach of contract.

It also announces by the clearest intimation that a consignee's claim to a right on the product can not be defeated by any thing short of the negotiation of the bills of lading, or of a designation in the bill that the shipment is for the account of the draft drawn.

The rights of a consignee who is a creditor have been acknowledged and enforced on the goods consigned to him when in his *legal* possession, *actually* or *constructively*, in the Helm case, 30 An. 943, and also in Florsheim vs. Howell, 33 An. 1184, and in Phelps vs. Howell, 35 An. 87, in both of which the provisions of the Act of 1874, No. 66, received application, the holder of the bills of lading being deemed the possessor.

If therefore it be true, and it surely is, that a consignee's right can not be destroyed by the consignor's ill practices, as was attempted to be done in those cases, it is no less so that equally sacred are those of a creditor of the consignor, to whom the bills of lading have been transferred, to secure the payment of a draft of which he is the holder and owner.

Such rights can not be impaired by the omission of the consignor to advise the consignee of the drawing of the draft and transfer of the bills of lading when the draft and bills attached are presented to the consignee *before* he has knowledge, or has accepted, or has taken possession of the consignment.

While ruling as we do, emphasizing the presentment *before* acceptance, we are not to be understood as intimating that, even had

the draft and bill holder presented same *after* the consignment had been accepted, his claim would be defeated.

The reason assigned by the defendants for not paying the draft, that they had received no instruction touching it, is inadmissible.

It was immaterial to the holder of the draft and bills whether such was or not the fact.

His possession of the indorsed bills was his unassailable title, and his exhibition of them to the consignees *previous* to their taking possession of the consignment were better than any instruction or advice which might have been given them, as they established conclusively that the consignor had parted with his title to it by transferring the same to another, and thus made known, in an absolute way, facts, knowledge of which could have been transmitted by correspondence. That presentment proves that the consignees were notified of the existence of the draft and of the transfer of the bills of lading *before* they had accepted the consignment and received the cotton.

The complaint that the plaintiff never had possession of the cotton, while the defendants had, can hardly be gravely contended for.

By the transfer of the bills of lading the plaintiff acquired a right of *pledge*, and therefore in legal contemplation had a valid constructive possession of it superior to that of any *actual* possessor, which continued to the very end, when the cotton, by being illegally sold by the consignees, passed to the hands of innocent third parties.

The claim, on the other hand, of the defendants, that *they* had possession, lacks foundation.

The possession which the defendents acquired *after* the draft with the annexed bills of lading had been presented and thus notified to them was, if not tortious, to say the least, was wholly unauthorized and unjustifiable, as taken in direct violation of the law, which forbids the delivery of product by a carrier in cases in which the bills of lading have been transferred, *unless* on surrender or cancellation of the same (Section 6, Act 150 of 1868) by the consignee or holder of the bills.

It is therefore apparent that the plaintiff was entitled, as holder of the draft and of the bills of lading indorsed in blank attached thereto, to be deemed and taken as owner of the same, so far as to give validity to any pledge which the forwarder had created thereon; that the defendants were in time amply notified of the conditional

Collins vs. Lottery Co.

shipment of the cotton to them; that when they accepted the consignment, received the cotton and disposed of it, they made themselves responsible therefor; and that, on their failing to surrender it or pay the draft when called upon to do so, they became liable for the value of the cotton; and as it exceeded the amount of the draft, they must be held to pay the same, the right of the plaintiff attaching to the proceeds.

It is clear that, as the cotton can not be made forthcoming by the defendants, and they can not produce the identical proceeds, they must be held generally liable for the amount of the draft.

The objection to the jurisdiction of this court, made by the appellee, is ill-founded. It suffices to say that the amount in dispute was that of the draft sued on, and that it was not reduced by the acknowledgment at first made by the defendants, that the plaintiff could be entitled only to the net balance of the proceeds of the cotton, after payment of what was due them, and which was below our lower limit; the acknowledgment not having been acted upon by the plaintiff before the defendants had changed their position, and the original condition of things restored.

The appellee has prayed for damages, treating the appeal as *frivolous*.

It may be, as in point of fact it is, true, that the defences set up are not maintainable, but as the issues were seriously presented and the questions of law involved were never previously clearly adjudicated upon, we do not think ourselves warranted in thus mulcting the appellants.

Judgment affirmed.